Filed 11/15/22  In re Victoria J. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re VICTORIA J. et al., Persons Coming Under the Juvenile Court Law. | B319069 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. DK02773B–C) |
| Plaintiff and Respondent, | |
| v. | |
| CHESTER J., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Linda L. Sun, Judge.  Affirmed.

Christine E. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, Kelly Emling, Deputy County Counsel for Plaintiff and Respondent.

———————————

Chester J. (father) appeals from juvenile court orders terminating parental rights to two of his children. He contends the orders should be reversed because the Los Angeles County Department of Children and Family Services (DCFS) failed to comply with the inquiry provisions of state law implementing the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.). We conclude that any ICWA inquiry error was not prejudicial, and we therefore will affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Prior dependency proceeding.

Father and Kimberly J. (mother) are the parents of Victoria J. (born in September 2010) and Noah J. (born in April 2013).

In December 2013, DCFS filed a petition alleging that domestic violence between mother and father put the children at risk of physical harm, and the family's home was unsanitary and lacked a functioning toilet, shower, refrigerator, oven, and stove. In April 2014, after the parents obtained new housing, the court dismissed the petition but ordered that DCFS continue to supervise the family pursuant to Welfare and Institutions Code[1] section 301.

---

[1]     All subsequent undesignated statutory references are to the Welfare and Institutions Code.

2

## II.  Present petition, adjudication, and disposition.

DCFS filed a petition in the present case on October 9, 2014.[2]  It alleged that the children were subject to juvenile court jurisdiction pursuant to section 300, subdivision (b) because mother abused drugs and suffered from mental illness, and father failed to protect the children.  Because the family's whereabouts were then unknown, the court issued arrest warrants for the parents and protective custody warrants for the children.

DCFS located the family approximately 18 months later, in March 2016, and took the children into protective custody.  They were placed with their paternal aunt.

The jurisdiction/disposition report noted that in the prior proceeding the juvenile court had found ICWA did not apply through father.  Mother had claimed possible ancestry through the Cherokee tribe, but she had said she was not eligible to be enrolled or registered with a Cherokee tribe.  ICWA notices had been sent to the Cherokee tribes, the Secretary of the Interior, and the Bureau of Indian Affairs (BIA) based on the information mother provided, but no ICWA finding had been made as to mother prior to the court's termination of jurisdiction.

The court held a jurisdiction/disposition hearing on May 26, 2016, at which neither parent appeared.  The juvenile court sustained the allegations of the petition, ordered the children removed from the parents, and entered reunification plans for each parent.  With regard to ICWA, the court took judicial notice

---

[2]    An older sibling was also named in the petition, but he turned 18 years old in July 2021, and thus he is not a subject of this appeal.

3

of its prior ICWA findings and noted that neither parent had come to court to provide any additional information. Because father previously had denied Indian ancestry and mother had said no one in her family was enrolled or registered with a tribe, the court found there presently was no reason to know the children were Indian children. It ordered the parents to keep DCFS, their attorneys, and the court aware of any new information relating to ICWA.

In November 2016, DCFS reported that neither parent was participating in court-ordered services. The children remained placed with the paternal aunt, with whom DCFS had regular contact, and social workers in Louisiana had made contact with the maternal grandparents to assess them for placement.

## III. ICWA findings; placement with prospective adoptive parents; termination of parental rights.

In late February 24, 2017, the paternal aunt reported that father had abducted the children from her home. Their whereabouts remained unknown for approximately a year.

The children were located in February 2018 and placed in foster care. In April 2018, DCFS reported that father was emotionally abusive to mother and his adult children, and it did not believe there were any interventions that would create a safe home for the children. DCFS further believed mother did not have the ability to protect the children, although she expressed the desire to do so. Therefore, DCFS did not recommend returning the children to either parent. In October 2018, DCFS recommended that the juvenile court set a section 366.26 hearing.

The parents, children, and an adult sibling were present at a hearing on October 29, 2018. Both parents submitted ICWA-

4

020 forms: Mother said she might have Indian ancestry through a Cherokee tribe, and father said he did not have Indian ancestry. After reviewing mother's ICWA-020 form, the court asked mother if she was a member of a tribe. She said that on her mother's side, she believed her grandfather's grandmother (the children's great-great-great grandmother) was Cherokee; on her father's side, she believed her grandmother grew up on a reservation, but she did not know the name of the tribe. She thought some of her relatives might have more information. The court ordered DCFS to further inquire of mother regarding her Indian ancestry and "to provide notice under ICWA to the Department of the Interior, Bureau of Indian Affairs, [and] all other tribes identified by either [mother] or family members." The court told mother she would be contacted by DCFS and asked her to "please cooperate with the worker as to acquiring as much information as we can about possible Indian ancestry." The court then set a section 366.26 hearing for February 26, 2019.

In February 2019, DCFS reported that the children's caregiver's adult son and his girlfriend had formed a strong attachment to the children and wished to adopt them. The same month, the juvenile court determined that the section 366.26 hearing would have to be continued because the children had not yet been placed with the prospective adoptive parents and DCFS had not complied with the court's order to conduct a further inquiry into mother's claim of Indian ancestry. The court ordered DCFS to immediately serve ICWA-030 notices on the Department of the Interior, the BIA, and all Cherokee tribes, and it continued the hearing for six months.

5

DCFS sent ICWA-030 notices to three Cherokee tribes in early March 2019. All three tribes responded that the children were not tribal members or eligible for membership; the United Keetoowah Band of Cherokee Indians further explained that "All Keetoowah citizens must have a Certificate of Degree of Indian Blood (CDIB) indicating at least 1/4 (one-quarter) of Keetoowah (Cherokee) blood <u>and</u> have direct ancestry to an individual listed on the 1949 Keetoowah Base Roll or the Dawes Roll. NO EXCEPTIONS will be made to these requirements."

At the August 29, 2019 hearing, the court found that all the noticed tribes had provided responses indicating that the children were not Indian children within the meaning of ICWA. Thus, it said, "[a]long with father's ICWA-020 form, [in] which he indicated no Indian ancestry, the court is finding, at this time, there's no reason to believe that the minor children are Indian children within the meaning of ICWA." The court asked whether any party wished to be heard with regard to Indian ancestry; no party did. The court ordered the children to be placed with the prospective adoptive parents and continued the section 366.26 hearing for six months.

The section 366.26 hearing was continued many more times for a variety of reasons, including the Covid-19 pandemic, mother's death, and changes in DCFS's recommendations. Ultimately, parental rights were terminated on January 13, 2022, more than seven years after the petition was filed. Father timely appealed from the order terminating parental rights.

## DISCUSSION

Father contends DCFS failed to properly investigate mother's claims of Cherokee ancestry because it did not conduct an ICWA inquiry of mother's extended family members—

6

specifically, her parents and adult children.  He thus urges that the order terminating parental rights should be conditionally reversed and the matter remanded to the juvenile court for further compliance with ICWA.

## I.  Legal standards.

ICWA was enacted " 'to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . .' [Citation.]" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 8 (*Isaiah W.*); see 25 U.S.C. § 1902.)

"Juvenile courts and child protective agencies have 'an affirmative and continuing duty to inquire' whether a dependent child is or may be an Indian child." (*In re Michael V.* (2016) 3 Cal.App.5th 225, 233; see also *Isaiah W.*, *supra*, 1 Cal.5th at pp. 9–11; § 224.2, subd. (a).)  An "Indian child" is "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see also § 224.1, subd. (a) [adopting federal definition of "Indian child"].)

The affirmative duty to inquire has several elements.  If a child is removed from his or her parents and placed in the custody of a county welfare agency, the agency must inquire whether a child is an Indian child.  Such inquiry "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect,

7

whether the child is, or may be, an Indian child . . . ." (§ 224.2, subd. (b).) The court also must make an ICWA inquiry when the parents first appear in court: The court "shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child" (§ 224.2, subd. (c)), and must require each party to complete California Judicial Council Form ICWA-020, Parental Notification of Indian Status (Cal. Rules of Court, rule 5.481(a)(2)(C)).

If the court or social worker has "reason to believe that an Indian child is involved in a proceeding," the court or social worker must "make further inquiry regarding the possible Indian status of the child" by, among other things, interviewing the parents and extended family members, and contacting any tribe that may reasonably be expected to have information about the child's membership, citizenship status, or eligibility. (§ 224.2, subd. (e)(2).) There is "reason to believe" a child involved in a proceeding is an Indian child whenever the court or social worker "has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe." (§ 224.2, subd. (e)(1).)

If the agency's inquiry creates a "reason to know" that an Indian child is involved, notice of the proceedings must be provided to the identified tribe or tribes. (§ 224.2, subd. (f).) There is "reason to know" a child is an Indian child if any one of six statutory criteria is met—e.g., if the court is advised that the child "is an Indian child," the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe. (§ 224.2, subd. (d).) Thereafter, the court shall confirm that the agency

8

used due diligence to identify and work with all of the tribes of which there is reason to know the child may be a member, or eligible for membership, to verify whether the child is in fact a member or whether a biological parent is a member and the child is eligible for membership. (§ 224.2, subd. (g).) A determination by an Indian tribe that a child is or is not a member of, or eligible for membership in, that tribe "shall be conclusive." (§ 224.2, subd. (h).)

If the juvenile court finds that "proper and adequate further inquiry and due diligence as required in this section have been conducted and there is no reason to know whether the child is an Indian child," the court may make a finding that ICWA does not apply to the proceedings, "subject to reversal based on sufficiency of the evidence." (§ 224.2, subd. (i)(2).)

## II. The trial court did not prejudicially err in finding that the children are not Indian children and ICWA does not apply to this case.

Father's sole contention on appeal is that the trial court erred in concluding that DCFS sufficiently investigated mother's claims of Cherokee ancestry because it failed to inquire of mother's extended family—specifically, of her parents and adult children. For the reasons that follow, we find no prejudicial error.

Father is correct that mother's claim of Cherokee ancestry created "reason to believe" the children were Indian children, thus requiring further inquiry. It appears no further inquiry was made of mother's extended family members, including of her parents, with whom DCFS had contact. The juvenile court thus erred by concluding that DCFS conducted an adequate ICWA inquiry.

9

However, after parental rights have been terminated, we will return a case to the juvenile court for ICWA error only if the appellant demonstrates such error was prejudicial. (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1014; *In re Dezi C*. (2022) 79 Cal.App.5th 769, 781, review granted Sept. 21, 2022, S275578; see also *In re M.M.* (2022) 81 Cal.App.5th 61, 71, review granted Oct. 12, 2022, S276099 [declining to follow "the 'error per se' line of cases"].) Here, the inquiry error plainly was not prejudicial. Mother's initial disclosure of Cherokee ancestry included her statement that she was not eligible to be enrolled in or registered with a Cherokee tribe, suggesting that she had investigated Cherokee tribal enrollment requirements and learned that she did not meet them. Mother's statement was confirmed by the three federally registered Cherokee tribes, each of which responded to the ICWA-030 notices mailed by DCFS in March 2019 that the children were not members or eligible for tribal membership. One of the three tribes, the United Keetoowah Band of Cherokee Indians, further explained that all tribal citizens must be at least one quarter Keetoowah (that is, must have at least one Keetoowah grandparent) and have direct ancestry to an individual listed on the 1949 Base Roll or the Dawes Roll. Because the children were, at best, the great-great-great grandchildren of a tribal citizen, they were at most 1/32 Cherokee, and thus they clearly did not meet this requirement. Thus, the concern expressed by many courts—that an agency's inaction results in a tribe's inability to make a determination as to tribal membership—does not apply here. (Cf. *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 745 ["it is in part the tribe's right to a determination of a child's Indian ancestry, but the tribe is not present, and the agency is charged with obtaining

10

information to make that right meaningful"]; *In re Antonio R.* (2022) 76 Cal.App.5th 421, 436 [same]; *In re Isaiah W.*, *supra*, 1 Cal.5th at p. 13 ["Indian tribes have interests protected by ICWA that are separate and distinct from the interests of parents of Indian children"].)

Father suggests that mother's representation that she was not eligible for membership in a Cherokee tribe is a red herring because "a determination of enrollment or eligibility for enrollment is not up to the parent." Father's reasoning is flawed. While it unquestionably is up to individual tribes to set their own enrollment requirements, we understand mother's statement not to be her own opinion, but instead to be based on information she had obtained from the relevant tribes or from her family. Further, as we have said, the tribes confirmed mother's statement in their responses to DCFS's ICWA-030 notices.

As we explained in *In re Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 1009, ICWA applies only if a child is an "Indian child"—that is, if he or she is either (a) "a member of an Indian tribe" or (b) "is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." (25 U.S.C. § 1903(4); see also § 224.1, subds. (a)–(b); Indian Child Welfare Act Proceedings, 81 Fed.Reg. 38795 (June 14, 2016) ["The statute specifies that if the child is not a Tribal member, then the child must be a biological child of a member and be eligible for membership, in order for the child to be an 'Indian child.' "].) Nothing in our appellate record suggests that mother was a member of a Cherokee tribe or had obtained membership on behalf of the children. To the contrary, her statements that the children were ineligible for tribal membership is persuasive evidence that she had *not* done so. (See *In re Ezequiel G.*, at

11

p. 1010 ["[A] parent typically will know whether she has applied for membership for herself or her child—and her disclosure that she has not will, in most cases, reliably establish that a child is not an Indian child within the meaning of ICWA"].)

We note in conclusion that this dependency case has been pending for more than eight years.  In all of that time, no one—including father, in this appeal—has ever suggested that the children are members of or eligible for membership in an Indian tribe.  Instead, father's sole argument on appeal is that had DCFS spoken to additional members of mother's family, they *might* have uncovered additional biographical information that *might* have caused a Cherokee tribe to conclude that the children were eligible for membership.  Such speculation, without more, does not demonstrate prejudicial error.

## DISPOSITION

The orders terminating parental rights are affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

EDMON, P. J.

I concur:

RICHARDSON (ANNE K.), J.*

---

*       Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

LAVIN, J., Dissenting:

For the reasons set forth in my dissent in *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1015–1025, I would conditionally affirm the orders and remand for further proceedings. Certainly, I appreciate that this dependency case has been pending for years. But the Department of Children and Family Services (Department) could easily have asked mother's identified family members about the children's possible Indian heritage and documented those efforts. It did not. Further, nothing in the record shows how those extended family members would have responded to questions about the children's possible Indian heritage.

I also note that instead of agreeing to a limited remand to allow the Department's social workers to ask a few simple questions, the parties have, inexplicably, spent months litigating this case on appeal. And this appeal will not be the last word on whether a parent must make an affirmative showing of prejudice to support a conditional affirmance and remand where the Department failed fully to perform its duty of inquiry. This issue is currently on review in *In re Dezi C.* (2022) 79 Cal.App.5th 769, review granted September 21, 2022, S275578, and will not be decided by our high court for months or years. The delay and continued lack of finality in this case are detrimental to all concerned, including the children and their prospective adoptive parents.

LAVIN, J.

1